THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: March 31, 2020



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Michael A. Gral,      Case No. 16-21329-GMH
                                        Chapter 7

        Debtor.

Donald A. Gral et al.,

        Plaintiffs,

v.      Adv. Proc. No. 17-2277-GMH

Michael A. Gral and
the Bankruptcy Estate of Michael A. Gral,

        Defendants.

**DECISION AND ORDER**

The plaintiffs in this adversary proceeding are twenty individuals and entities

related to or associated with Michael Gral, the debtor in the underlying chapter 7 bankruptcy case. Gral's creditors sued the plaintiffs in state court seeking to recover from them debts owed by Gral. Some of the claims asserted in state court are of a type that Gral's bankruptcy estate could assert against the plaintiffs to recover on behalf of Gral's creditors collectively; they commenced this adversary proceeding to request declarations that those claims lack merit. The bankruptcy estate, first through a committee of creditors holding unsecured claims (when the case was under chapter 11), and then through the chapter 7 trustee (after conversion), has attempted to plead counterclaims against the plaintiffs several times.

This decision addresses the plaintiffs' contentions that (1) the estate's operative pleading fails to state any counterclaims on which relief can be granted and (2) the court should dismiss the counterclaims with prejudice and without leave to amend. The decision also dismisses the plaintiffs' claims and affords them notice of, and an opportunity to be heard on, the court's tentative conclusion that developments in this proceeding and the bankruptcy case warrant abstention from any further adjudication of their requests for declaratory relief.

I

A

Before Michael Gral filed a chapter 11 bankruptcy petition in February 2016, judgment creditors Bielinski Bros. Builders, Inc. ("Bielinksi") and SB1 Cedarburg LLC ("SB1") had made repeated efforts to collect judgments owed to them by Michael Gral. Two of those efforts provide necessary background to the present dispute.

The first effort was Bielinski's 2009 collection action against Michael Gral and his father and guarantor, Donald A. Gral (the "Collection Action"). The state court overseeing the Collection Action appointed a supplementary receiver ("Receiver") and a special master ("Special Master") and later entered a charging order against twelve entities in which Michael Gral held an interest. Case No. 16-21329, ECF No. 18-5, at 1–2,

& ECF No. 18-7, at 1–2. The charging order directed those entities to pay Bielinski and inform the Receiver of all distributions, payments, and transfers "to, on behalf of, or for the benefit of Defendant Michael A. Gral" until the judgment was fully paid. See Case No. 16-21329, ECF No. 18-5, at 2–5. The charging order also directed the Special Master and the Receiver to supervise the entities' compliance with the payment and reporting requirements. *Id.* at 6. The state court later amended the charging order at Bielinski's request to add, among other things, eight additional entities in which Michael Gral held an interest. Case No. 16-21329, ECF No. 18-6, at 2.

The Receiver in the Collection Action noted that Michael and Donald A. Gral had assets that included "membership and ownership interests in more than a dozen LLCs or other entities, most unilaterally controlled by the Gral family", and that "[t]he multiple entities, lenders, inter-company loans, and other transactions in this case constitute one of the most complex networks of ownership entities [he] ha[d] seen in [his] 13 years of practice as a receiver." Case No. 16-21329, ECF No. 18-7, at 3. Based on this, the Receiver "concluded that a full forensic accounting" of entities in which Michael and Donald A. Gral held a membership interest was "necessary to sort through who is entitled to what and whether transfers were made in fraud of creditors." *Id.*

In 2013 Bielinski commenced the second collection effort that is relevant here: a state-court lawsuit against Michael Gral, his wife, family members, and legal entities owned by those individuals and others alleging claims for fraudulent transfers, conspiracy, and reverse veil-piercing against the entity defendants (the "Reverse Alter Ego Action"). Case No. 16-21329, ECF No. 18-3. SB1 later intervened as a plaintiff in the Reverse Alter Ego Action, and the court appointed the same Special Master as in the Collection Action. Case No. 16-21329, ECF No. 18-8.

Accepting the creditors' contentions that Michael Gral had "creat[ed] a labyrinth of legally intertwined and inter-independent [sic] entities that amount[ed] to nothing more than a shell game intended to block any meaningful attempts from the plaintiffs to

collect that which [wa]s owed to them", Case No. 16-21329, ECF No. 18-12, at 65, the state court entered an order enjoining the vast majority of the defendants from "making any sales, purchases, transfers, distributions, advances, or loans of any kind to any entity or party . . . [and] from refinancing any existing loans or obligations or incurring any new obligations of any kind", except that the defendants, several of which were entities that owned or managed commercial and residential real estate, could still "collect rents and . . . make expenditures necessary to operate their businesses". *Id.* at 1–2 & 4–5.

Immediately before Michael Gral filed his bankruptcy case, the Special Master concluded that the defendants in both the Collection Action and the Reverse Alter Ego Action were in contempt because they had made payments that the Receiver and the Special Master believed violated the state-court orders. Case No. 16-21329, ECF No. 18-14.

B

Shortly after Michael Gral filed his chapter 11 case, Bielinski filed a motion to dismiss or, in the alternative, abstain or appoint a trustee. Case No. 16-21329, ECF No. 17. SB1 also asked the court to appoint a trustee. Case No. 16-21329, ECF No. 30. After Bielinski withdrew its motion and the court denied SB1's motion, Case No. 16-21329, ECF No. 146, at 3–4, Bielinski and SB1 filed proofs of claim and were later appointed, under 11 U.S.C. §1102, to the three-creditor Official Committee of Unsecured Creditors (the "Committee"). Case No. 16-21329, ECF No. 262.

Soon after appointment of the Committee Michael Gral proposed to compromise any claim the bankruptcy estate might have against his co-defendants in the Reverse Alter Ego Action for $140 thousand, $30 thousand of which was to be contributed by Capital Ventures, LLC, an entity owned by Michael Gral that had also commenced a chapter 11 case. Case No. 16-21329, ECF No. 314, at 4. In exchange for this settlement payment the bankruptcy estate would release each of Michael Gral's state-court co-

defendants from "all claims held by the estate and exercisable for the benefit of all creditors . . . based on fraudulent transfers, other avoidable transfers, or theories of alter ego, veil-piercing, reverse veil-piercing or conspiracy to defraud creditors generally." Case No. 16-21329, ECF No. 314, at 4. The Committee, the United States trustee, Bielinski, SB1, and other creditors objected to the proposed compromise. Case No. 16-21329, ECF Nos. 374, 377, 388, 389, 390 & 402.

Before the court could hold a hearing on the debtor's motion to compromise, the debtor filed a motion requesting that the court appoint an examiner for the limited purpose of evaluating the debtor's settlement proposal, as outlined in the debtor's motion to compromise. Case No. 16-21329, ECF No. 379. After a hearing on the motion, on request of the United States trustee, the court appointed Michael Dubis, a long-time member of the chapter 7 trustee panel, as examiner. Case No. 16-21329, ECF Nos. 485, 586 & 605. The court directed Dubis to examine and analyze various pre-petition state-court actions initiated against Michael Gral and report to the court "regarding which claims, if any, he would pursue if he were in the position of a Chapter 7 trustee, as well as the reasonableness of the proposed compromise of those claims from the perspective of a hypothetical Chapter 7 trustee." Case No. 16-21329, ECF No. 605, at 6–8.

The court specifically directed Dubis to "consider and report on alter ego claims, abuse of corporate or limited liability company or limited partnership form, veil piercing, conspiracy, fraudulent transfer, and other claims that may be brought against the Debtor, Capital Ventures LLC, Gral Holdings Key Biscayne LLC, and non-debtor individuals and entities identified in the Creditors' state-court pleadings." *Id.* at 8. In conducting this examination, Dubis was authorized "to take informal or formal discovery of the Debtor or any other person or entity", and the court ordered the debtors and all interested parties to cooperate fully with Dubis. *Id.* at 8–9.

Several months later, in March 2017, Dubis reported his conclusions. Case No. 16-21329, ECF Nos. 696, 704 & 750. There was "absolutely no doubt in [his] mind that

Michael Gral [wa]s the alter ego of each of the entities involved, that own the real estate at least." Case No. 16-21329, ECF No. 750, at 8. He was "not very impressed with the fraudulent conveyance actions": although he "found evidence of fraudulent conveyances", they were "not necessarily fraudulent conveyance *by* the debtor, but fraudulent conveyances *to* the debtor". *Id.* at 9 (emphasis added). He believed that the debtor had been able to draw funds out of entities that were ultimately owned at least in part by the debtor and his family, including prepaid management fees for which there was "just no justification". *Id.* at 9 & 34.

Dubis concluded that numerous entities should be "substantively consolidated" with the debtor's chapter 11 estate so that the bankruptcy estate could sell the real property owned by those non-debtors to pay the debtor's creditors. *Id.* at 22–37. In this way, he believed, net sale proceeds that would be achieved by selling property owned by several of the LLCs could be offset by net operating losses held by Integral Services, LLC, a legally distinct entity owned by the debtor and his brother, to avoid paying capital gains tax that would make those real estate sales far less beneficial. See *id.* at 37–38. Alternatively, Dubis concluded, the relevant non-debtor entities might be found to be alter egos of the debtor in a reverse-veil-piercing action brought by the Committee. *Id.* at 34. Dubis opined that the debtor's proposed compromise of all such claims for $140 thousand was unreasonable. See *id.* at 56.

Following the examiner's report, the court authorized the Committee to undertake its own examination of the debtor to investigate whether the debtor had transferred assets, how the debtor had dealt with related persons and entities, and whether there were facts to support alter-ego and fraudulent-conveyance claims. Case No. 16-21329, ECF Nos. 625 & 704. A few months later, in June 2017, the court authorized the Committee to file a competing chapter 11 plan of reorganization. Case No. 16-21329, ECF No. 809, at 4. The Committee proposed a liquidating plan that provided for substantive consolidation of the estates of the debtor (and two other jointly

administered bankruptcy estates) with 22 other entities that were not bankruptcy debtors. Case No. 16-21329, ECF No. 866, at 19–20. The debtor, the Committee, and Bielinski turned to mediation before then–Chief Judge Kelley in an attempt to reach agreement on a confirmable plan. Case No. 16-21329, ECF Nos. 809 & 823.

C

In September 2017—after mediation in the main case failed, see Case No. 16-21329, ECF No. 852, at 2, & ECF No. 948, at 3— two individuals and eighteen limited liability companies named as plaintiffs in the Reverse Alter Ego Action brought this adversary proceeding against Michael Gral's bankruptcy estate, seeking declaratory relief. As the complaint explains, the plaintiffs perceived a "need" for "prompt resolution" of any potential claims against them by the estate:

> The plaintiffs' potential liability to the Estate has pervaded the Debtor's chapter 11 proceedings. The underlying allegations of fraudulent transfers, alter ego, veil-piecing and conspiracy have been repeated by Bielinski in numerous pleadings; formed the subject of a Rule 9019 compromise motion by the Debtor; were investigated by an examiner; are treated in competing plans; and prevented a successful mediation of global issues in the case.
>
> . . . In order for the plaintiffs to conduct their respective businesses and plan their own financial affairs, they need certainty with respect to the Estate's potential claims against them.

ECF No. 1, at 9.

The plaintiffs requested declarations that (1) none of them received transfers of property from Michael Gral avoidable under §544 or §548 of the Bankruptcy Code or recoverable under §550 of the Code; (2) the assets of the LLC plaintiffs cannot be made property of Michael Gral's bankruptcy estate "through or by virtue of such legal doctrines as alter ego, veil-piercing, reverse veil-piercing or substantive consolidation"; (3) the individual plaintiffs did not conspire with Michael Gral to defraud or injure his creditors; and (4) the plaintiffs who filed proofs of claim have allowed claims under Code §502 that are not subject to subordination under Code §510(c). *Id.* at 2, 14–20.

On October 5, 2017, the Committee moved to intervene. ECF No. 7. When the court held an initial pretrial conference less than two weeks later, the Committee's counsel informed the court that they would be moving to withdraw as counsel. ECF No. 10, at 3. The court granted the Committee's motion to intervene and for derivative standing to represent the estate in this adversary proceeding. *Id.*

The Committee filed counterclaims in connection with its motion to intervene. See ECF No. 8, at 26–49. At a hearing on November 27, 2017, the court ordered the Committee to file an amended answer and counterclaim no later than January 5, 2018. ECF No. 14, at 3. The Committee missed that deadline, ECF No. 16, at 4, but the court extended it at the parties' request several times. E.g., ECF No. 18, at 2 (extending deadline to March 9, 2018); ECF No. 21, at 1 (further extending deadline to May 8, 2018).

The court then stayed the proceeding altogether based on "ongoing discussions [between the Committee and the debtor] exploring the possibility of a consensual plan". See ECF No. 23, at 5 (describing these discussions as "in their early stages" but, "[n]evertheless, . . . constructive"); ECF No. 24. The court continued the stay several times to accommodate the debtor's efforts to confirm a plan of reorganization, while considering approval of the debtor's disclosure statement and allowing the debtor to engage in plan negotiations with the Committee anew, ECF No. 29, at 5; ECF No. 32, at 2; ECF No. 35, at 3.

These negotiations also failed. Park Bank filed foreclosure actions against several of the plaintiff entities that owned real estate pledged to secure the bank's loans, including several of the plaintiff entities singled out by the examiner for "substantive consolidation" and several of the entities that the debtor relied on to generate proceeds to fund his chapter 11 plan. Case No. 16-21329, ECF No. 1635, at 5–6. The Committee ultimately decided to file a motion to dismiss or convert the bankruptcy case, which resulted in a further postponement of its filing amended counterclaims. ECF No. 38, at 1 & 3.

D

After the Committee filed a motion to convert the case or, in the alternative, to dismiss it, the debtor agreed to convert the case to one under chapter 7. Case No. 16-21329, ECF No. 1644, at 2. The court converted the case to chapter 7 at a hearing on March 20, 2019. *Id.* The court again continued the stay of this adversary proceeding to allow for the appointment of a chapter 7 trustee and to afford the trustee time to take over for the Committee in prosecuting the proceeding. ECF No. 40, at 3.

In July 2019 the court authorized the chapter 7 trustee to employ counsel to represent him in this adversary proceeding and afforded him and his counsel additional time to investigate the circumstances underlying it. Case No. 16-21329, ECF No. 1701; see also ECF No. 45, at 3. The court directed that by an August 19 hearing, the trustee "must be prepared to provide the court with a meaningful explanation of the estate's contemplated theories of recovery", among other things. ECF No. 45, at 3.

At the August 19 hearing counsel for the United States trustee announced that he might move to dismiss the chapter 7 case. See Case No. 16-21329, ECF No. 1706, at 2. The court set an August 30 deadline for any dismissal motions and adjourned the status hearing in this adversary proceeding to September 30. ECF No. 49, at 2.

On September 3 the court held a preliminary hearing on the United States trustee's motion to dismiss. At that hearing counsel for the chapter 7 trustee orally joined the United States trustee's motion to dismiss but also suggested that the estate may have claims in this adversary proceeding that could result in distributable funds.

The existence of valuable claims of the estate was at least potentially relevant to the pending motion to dismiss the debtor's case, so, on September 6, the court ordered the chapter 7 trustee, by September 27, to "either (1) file a well-pleaded answer and counterclaims . . . or (2) give notice to all creditors in the debtor's chapter 7 case that he proposes to abandon all claims that the estate could assert in this adversary proceeding and file such notice with the court." ECF No. 51, at 2–3. The order further states:

> If the trustee elects to file an amended pleading, he must plead non-conclusory facts demonstrating that each alleged counterclaim is plausible and must plead with particularity the facts on which any claim of fraud is premised. All counterclaims based on alter ego, veil piercing, or a similar theory must be pleaded against distinct entities (rather than against a group or groups of entities) and must allege non-conclusory facts plausibly supporting the claim against each specific entity. In addition, if the trustee's pleading does not identify the legal bases for the claims he pleads, he must file a memorandum with his pleading that describes at least one legal theory for each claim, citing supporting legal authority.

*Id.* at 3. The chapter 7 trustee did not timely comply with the order, so the court ordered him to do so, and to file any third-party claims, by October 15. ECF No. 55, at 4.

The chapter 7 trustee filed an answer and counterclaims on October 15. ECF No. 58. The pleading incorporates by reference both (1) an entire pleading's worth of factual allegations from the Reverse Veil Piercing Action, *id.* at 11 ("[Trustee] McDonald . . . adopts and incorporates the factual allegations in the Second Amended Complaint by . . . Bielinski . . . in Milwaukee County Case No. 13-CV-6699 . . . ."), and (2) a 137-page accounting report prepared for that litigation, attached to the pleading as exhibit 1. *Id.* at 12. Observing that "[p]leadings must stand on their own", the court ordered the trustee to "file a new amended counterclaim that states without incorporation by reference all allegations on which he bases his counterclaims." ECF No. 59 (citing *Kawczynski v. F.E. Moran Inc.*, 15 C 3099, 2015 WL 6445331, at *1 (N.D. Ill. Oct. 21, 2015)). The trustee filed another amended answer and counterclaim on October 16. See ECF No. 60.

II

The plaintiffs moved to dismiss the trustee's counterclaims. The trustee objected. The court heard argument and took the matter under advisement. For the following reasons, the plaintiffs' motion to dismiss the counterclaims is granted.

A

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "While all well-pled facts are taken as true and viewed in a light most favorable to the plaintiff, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (alteration in original) (citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010)).

With respect to "claim[s] . . . of fraud . . . , the sufficiency of [a] complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)", which "requires a pleading to 'state with particularity the circumstances constituting fraud.'" *Id.* at 736–37 (quoting Fed. R. Civ. P. 9(b)). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Id.* at 737 (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

1

The trustee's first counterclaim is for fraudulent transfers prohibited by Wisconsin Statutes sections 242.04 and 242.05. The plaintiffs argue that the trustee failed to plausibly allege any transfers by the debtor, much less any specific instances of fraud. The trustee responds that, in addition to prohibiting fraudulent "transfer[s] made . . . by a debtor", sections 242.04 and 242.05 prohibit fraudulent "obligations incurred by a debtor" and that he has adequately alleged numerous instances in which the debtor

incurred fraudulent obligations to the plaintiffs. ECF No. 73, at 4–5. The trustee specifically cites paragraphs 73–82 of the counterclaims, which consist of startlingly vague allegations, such as, "From 2006 through 2013, Donald J. Gral made hundreds of thousands of dollars of loans and contributions to Debtor . . . ." ECF No. 60, at 21, ¶75.

The trustee's first counterclaim does not satisfy the ordinary pleading standard, much less the heightened pleading standard for fraud claims. The trustee argues that the debtor incurred the alleged obligations "[w]ithout receiving a reasonably equivalent value in exchange for [them]" and knowing that he would be unable to pay them, so they qualify as fraudulent under sections 242.04 and 252.05. ECF No. 73, at 4–5. But he does not allege any specific facts about any particular obligation that the debtor incurred, to whom he incurred it, what he received in exchange for it, or why he was unable to satisfy it. At best, the trustee "pleads facts that are 'merely consistent with' . . . liability," which is insufficient to overcome a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The trustee contends that, by resisting discovery, the plaintiffs have prevented him from obtaining the facts that he needs to prove that the debtor incurred fraudulent obligations to the plaintiffs. Which is to say, the trustee believes that he should be able to proceed to discovery on his threadbare allegations. The Supreme Court has clearly indicated otherwise. E.g., *id.* at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery . . . ."). The plaintiffs have it right: "[I]nsufficiently pleaded claims are not . . . a reason to *grant* discovery, but a justification for *denying* it . . . ." ECF No. 78, at 4.

2

The trustee's second counterclaim is for conspiracy under Wisconsin Statutes chapter 134 and common law, though the trustee concedes that the reference to chapter 134 was in error. ECF No. 73, at 6. Accordingly, that portion of the claim will not be addressed further in this order.

The plaintiffs argue that the trustee's counterclaim for common-law conspiracy is nothing more than what the Supreme Court has called "a formulaic recitation of the elements of a cause of action", which is insufficient to survive a Rule 12(b)(6) motion. See *Twombly*, 550 U.S. at 555. In response, the trustee points out where in the counterclaims he alleged the elements of a common-law conspiracy claim. ECF No. 73, at 6–7. The trustee's response makes the plaintiffs' point: the trustee did nothing more than plug the names of the parties into a generic description of a common-law conspiracy claim.

This counterclaim falls so far short of plausibly alleging a cognizable conspiracy claim that the court need not discuss in detail the implausibility of the parties' supposed plot to keep money away from the debtor's creditors by giving it to the debtor, the first person from whom his creditors sought to collect.

3

The trustee's third counterclaim alleges that various entities are alter egos of the debtor because he dominates them completely, though "with the permission and acquiescence of [his father] and [brother]". ECF No. 60, at 23. The debtor, this counterclaim alleges, used his domination of these entities to cause them "to transfer funds to him directly or [indirectly through a family trust] for the purpose of avoiding [his] bona fide legal obligations to the Estate and [his] creditors." *Id.*

This counterclaim is replete with puzzling suppositions: For one, it is not at all clear how the debtor's causing assets to be transferred to himself would keep those assets away from his creditors, who can collect from him. For another, an individual is generally not said to "control[] and dominate[]" an entity—such that the entity has "no separate mind, will or existence of its own", *Consumer's Co-op. of Walworth Cty. v. Olsen*, 419 N.W.2d 211, 218 (Wis. 1988)—if he can only act for that entity with the "permission and acquiescence" of multiple others. ECF No. 60, at 23.

Even putting these issues aside, veil-piercing is not a free-floating remedy to be invoked whenever an entity is controlled by an individual. The doctrine applies to overcome the strong presumption that corporations and like entities are legally distinct from their owners where (1) an individual uses his complete domination of an entity "to commit [a] fraud or wrong, . . . perpetrate the violation of a statutory or other positive legal duty, or [commit a] dishonest and unjust act in contravention of [another's] legal rights" and (2) that misconduct proximately causes an injury or loss. *Consumer's Co-op.*, 419 N.W.2d at 218.

The trustee alleges injury to the estate and creditors in the most generic terms possible. He alleges no specific instances of domination of any entity by the debtor, no particular fraud or wrong or violation of a statutory or positive legal duty or dishonest and unjust act in contravention of the rights of the estate or any creditor, and no precise injury or loss proximately caused by any such misconduct. As with the other counterclaims, the trustee has merely alleged the elements of a cause of action, which is insufficient.

4

In his fourth and final counterclaim, the trustee alleges that "Donald J. Gral [Michael Gral's brother] acted as an attorney for Debtor, Donald A. Gral, himself, and the named Gral-entities" and that in doing so he failed to stop his clients "from causing harm to the Gral-entities, which in turn . . . caused harm to the Estate and Debtor's creditors." ECF No. 60, at 24, ¶¶96–98. On these allegations the trustee seeks relief for legal malpractice. The plaintiffs argue that the trustee lacks standing to seek relief for Donald J. Gral's alleged negligence in providing legal services to third parties, the Gral entities, and that, in effect, he asserts that the debtor, not Donald J. Gral, caused the alleged harm.

Even under a liberal construction, one struggles to cogently describe any legal malpractice claim that the trustee could assert here. At best, the trustee alleges

(implicitly) that Donald J. Gral, as the debtor's counsel, negligently failed to prevent the debtor from harming companies that the debtor owned, to the eventual detriment of his creditors. Even if true, at most, these allegations imply that Donald J. Gral may be liable to the Gral entities for harm resulting from his own malfeasance. After all, an attorney may be liable to third parties for his own misconduct, even if committed while acting as counsel for another. See, e.g., *Goerke v. Vojvodich*, 226 N.W.2d 211, 213 (Wis. 1975). But the trustee cannot assert malpractice claims of the Gral entities, and the debtor could not pin his own misconduct on his attorney.

Moreover, even if the court could conjure some comprehensible theory of malpractice on which the trustee could recover, the pleading is so lacking in specifics as to require its dismissal. When (other than "at all material times") did Donald J. Gral represent the debtor? What was the scope of that representation? On what occasions and in what ways did that representation fall below a reasonable standard of professional practice? What harm resulted and to whom? Perhaps the trustee cannot answer any of these questions. At the very least, his counterclaims don't. In failing to allege even perfunctory details about the representation and supposed malpractice, the trustee has left the plaintiffs, specifically Donald J. Gral, with insufficient notice of the basis of any possible claims against him that the trustee may have. This failure is fatal to the trustee's malpractice counterclaim.

5

One last note on the sufficiency of the counterclaims: The trustee attached to his pleading and incorporates by reference a report by a forensic accounting firm prepared for Bielinski in its state-court suit against the plaintiffs and Michael Gral. A party may plead by reference to documents attached to a pleading. See Fed. R. Civ. P. 10(c). And, "on a motion to dismiss, . . . a court may consider, in addition to the allegations set forth in the [pleading] itself, documents that are attached to the [pleading]," as well as "documents that are central to the [pleading] and are referred to in it". *Williamson v.*

*Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Ordinarily, a party will attach "a document that defines a party's rights, obligations, entitlements, or liabilities—a contract, for example", though that is not always the case, nor is that necessary. *Id.*

When a party attaches documents to a pleading, the court "should determine whether considering the particular documents in substance is appropriate", and if so, to what extent. *Otis v. Demarasse*, 886 F.3d 639, 647 (7th Cir. 2018). That inquiry turns on consideration of factors such as "why a [party] attached the documents, who authored the documents, . . . the reliability of the documents", and the nature of the documents and their contents. *Id.* (quoting *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Thus, for example, while "[a] blanket adoption rule makes sense in the context of an attached contract or loan agreement because the contract represents an agreement between two or more parties to which the law binds them", such a rule may not be reasonable with respect to other types of documents. *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 455 (citing Fed. R. Civ. P. 10(c)).

Here, the trustee's counterclaims allege that, as a result of the attached report, "numerous fraudulent transfers by and among Debtor" and the plaintiffs and others "were discovered", and "it is believed that Debtor, Donald A. Gral and Donald J. Gral bought, sold, and transferred assets to render themselves and their legal entities temporarily insolvent for the purpose of assisting Debtor to avoid his obligations [to] the Estate and his creditors." ECF No. 60, at 12–13, ¶¶8–9. This suggests that the trustee attached and incorporated the report either to provide historical context for his counterclaims or, perhaps, because he "has, to some degree, relied on [its] contents as support for [his] claims." See *Williamson*, 714 F.3d at 436.

Even if the trustee has relied on the report as support for his counterclaims, it does not save those claims from dismissal. The report, with its exhibits, is 137 pages long, and it principally contains opinions, not allegations or facts. Incorporating such a document by reference and relying upon it to substantiate ill-defined claims falls well

short of satisfying the federal pleading standards set forth in Federal Rules of Civil Procedure 8, 9, and 10. "The primary purpose of these rules is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). The trustee has not done that here. Neither the plaintiffs, against whom the trustee asserts his counterclaims, nor the court can discern with any specificity what the trustee alleges the plaintiffs have done and why the plaintiffs' conduct entitles the estate to relief. See *id.* at 798 ("[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy."); see also *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[E]ven if it were possible to navigate through these papers to a few specific instances of fraud, why should the court be obliged to try? Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud. Federal judges have better things to do, and the substantial subsidy of litigation . . . should be targeted on those litigants who take the preliminary steps to assemble a comprehensible claim."); cf. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

At any rate, the trustee, in opposing dismissal, does not contend (other than, perhaps, indirectly) that the report fills in his pleading's factual gaps or focuses its otherwise hazy assertions. To the contrary, in objecting to dismissal, he repeatedly cites and quotes his pleading's allegations without any clear reference to the attached accounting report. And, as the court ordered on October 16, 2019, the counterclaims were to "state[] without incorporation by reference all allegations on which [the trustee] bases his counterclaims." ECF No. 59. Under these circumstances, the court disregards the report in assessing the sufficiency of the trustee's pleading.

B

The remaining question with respect to the trustee's counterclaims is whether the court should permit the trustee to amend his pleading. The standard for allowing amendments is an easy one to satisfy: "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); see Fed. R. Bankr. P. 7015. Yet, even this standard has its limits, and the court may deny leave to amend where there is a "justifying reason" to do so, "such as . . . repeated failure to cure deficiencies by amendments previously allowed". *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The trustee and his predecessors in interest have tried several times and failed each time to plead any coherent, cognizable claims against the plaintiffs in this proceeding, despite the court's descriptions of the deficiencies in their pleadings and indulgence in permitting the repeated, but ultimately futile, amendment of those pleadings. This failure persists even though the trustee had access to the examiner's report and investigation materials, which included interviews with the debtor and documents provided by the debtor and the plaintiffs, as well as their creditor-adversaries. Enough. See *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013) ("[I]n court, as in baseball, three strikes and you're out."). Dismissal of the trustee's counterclaims is with prejudice and without leave to amend.

III

As explained above, the plaintiffs filed this adversary proceeding for a declaratory judgment seeking "certainty with respect to the Estate's potential claims against them." ECF No. 1, at 9. By dismissing the trustee's claims with prejudice, this end has been achieved. The plaintiffs' counsel, however, at the argument on the motion to dismiss the counterclaims, represented that the plaintiffs would continue to seek adjudication of their request for declaratory relief even if the court were to dismiss the trustee's counterclaims with prejudice.

One problem with continuing this proceeding is that the plaintiffs' complaint

does not allege non-conclusory facts from which the court can reasonably infer that any plaintiff has a cognizable claim for relief against the bankruptcy estate of Michael Gral. The complaint describes the twenty plaintiffs, their prepetition claims against Michael Gral, and the Reverse Alter Ego Action. Then, in a conclusory manner, it alleges that plaintiffs didn't receive fraudulent transfers, are not Michael Gral's alter egos, didn't conspire with Michael Gral or others to defraud or injure Michael Gral's creditors, and didn't engage in any inequitable conduct prejudicial to other creditors. Based on these conclusions, the complaint requests declarations that none of the plaintiffs received avoidable fraudulent transfers from Michael Gral; that the assets of the entity plaintiffs are not property of the estate and cannot be made estate property through substantive consolidation, veil-piercing, or alter-ego claims; that neither Donald A. Gral nor Donald J. Gral conspired to defraud creditors; and, for those who filed proofs of claim, that their claims are not subject to equitable subordination and are allowed in the amounts filed. This is far from sufficient.

Another problem: even assuming the sufficiency of the complaint, dismissal of the trustee's counterclaims with prejudice begs the question, what dispute remains? In effect, the plaintiffs ask for a judgment declaring that they would succeed in defending against claims that have not been or can no longer be asserted. Even if this court can issue such a judgment—an arguably debatable proposition, as the relief requested is, at this point, all but advisory—why devote the parties' and the court's limited resources toward that end? What more would a declaratory judgment afford the plaintiffs than a judgment dismissing the trustee's claims with prejudice? And why would the chapter 7 trustee defend against the plaintiffs' declaratory claims after the court dismisses the estate's claims with prejudice?

The plaintiffs' goal can only be to gain some advantage in future litigation against Michael Gral's creditors. The Declaratory Judgments Act, 28 U.S.C. §2201, affords "federal courts unique and substantial discretion in deciding whether to declare

the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); see also *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942); *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). But exercising that discretion to afford the plaintiffs a forum in which to pursue relief as practically nebulous and potentially meaningless as the relief they seek here is unfathomable.

The court will dismiss the plaintiffs' claims, but as discussed during argument on the motion to dismiss the counterclaims, and to provide notice of its intent to dismiss the plaintiffs' claims, the court will afford the plaintiffs a final opportunity to show that this proceeding should continue. If they cannot, the court will, in the interest of justice, abstain from hearing it. 28 U.S.C. §§1334(c)(1) & 2201.

IV

For these reasons, it is ordered that:

1. The trustee's counterclaims are dismissed with prejudice and without leave to replead.

2. The plaintiffs' claims are dismissed.

3. If the plaintiffs contend that this court should entertain their requests for declaratory relief, they must file on or before **May 1, 2020**, (a) an amended complaint pleading facts with particularity that they allege entitle them to specific declaratory relief and (b) a memorandum and any other materials supporting their contention that this court should adjudicate their requests for declaratory relief. If the plaintiffs do not comply with this filing requirement, the court will enter an order directing entry of judgment in the plaintiffs' favor on the trustee's counterclaims and dismissing the remainder of the proceeding without prejudice based on the court's disinclination to exercise jurisdiction over the plaintiffs' claims.

#####